E-FILED
Thursday, 27 January, 2011 04:37:21 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JAMES FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 07-3333 |
| | ) | |
| CAROL ADAMS, ROBERT | ) | |
| KILBURY, TEYONDA WERTZ, | ) | |
| KAREN SQUIRES, TOMMY | ) | |
| BRYDEN, JAMES NEPOSCHLAN, | ) | |
| and JASON HENDERSON, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

Pending before the Court is the Defendants' motion for summary judgment.

## I. INTRODUCTION

This is an action pursuant to 42 U.S.C. § 1983, wherein Plaintiff James Foster alleges that he was retaliated against by the Defendants because he engaged in speech protected by the First Amendment. From mid-2002 through mid-2003, Foster engaged in investigations of health and

safety complaints by employees at buildings utilized by the State of Illinois and its agencies. Foster claims that the Defendants retaliated by suspending him and eventually discharging him because of his complaints and statements regarding building conditions in 2002 and 2003.

The Defendants assert that there are a number of legal deficiencies in Foster's claims and that there is simply insufficient evidence from which a jury could reasonably conclude that he was terminated because of his speech. Foster contends that there are at least questions of fact which preclude the entry of summary judgment in favor of the Defendants.

## II. FACTUAL BACKGROUND

Foster was previously employed as an Office Associate with the Illinois Department of Human Services ("DHS"). He was a member of AFSCME by virtue of being employed by the State of Illinois. Foster was formerly a member of the executive board of AFSCME as the health and safety chairperson during 2002 and part of 2003.

According to the complaint, Defendant Carol Adams is employed by DHS as its Secretary. Defendant Robert Kilbury was employed by DHS as

its Director of Rehabilitation Services.  Defendant Teyonda Wertz was employed by DHS as its Chief of Staff.  Defendant Karen Squires is employed by DHS as the manager of its Personnel Bureau.  Defendant Tommy Bryden and James Neposchlan were also employed by DHS at all relevant times.  Defendant Jason Henderson was employed by the State of Illinois Department of State Police.

From 2002 to mid-2003, Foster investigated complaints from State employees about building conditions and health and safety issues as part of his duties as health and safety chairperson.[1]  Foster's standard response to these complaints was to notify management and maintenance, who would take the appropriate steps.  At times, the grievance process would be used to address building conditions.  Foster notes that sometimes grievances would be filed immediately.

The investigations were conducted during normal working hours.  Foster would find out about building condition issues through the union

---

[1] The Plaintiff's complaint indicates that he engaged in protected speech through mid-2003.  In his response to the Defendant's motions for summary judgment, he states that he engaged in this activity until September 2003.

3

due to employee complaints, or through employees complaining to him while he was performing proactive investigations of health and safety equipment in State buildings.  Foster became aware of issues with building conditions in the Alzina Building.  He learned of problems with bird feces at that building.  Foster discussed those issues with Defendant Tommy Bryden in 2002 or early 2003.  Bryden assured Foster that the issues with bird feces at the Alzina Building would be rectified.  Foster also became aware of other issues about building conditions at the Alzina Building that were addressed quickly, including dust and the HVAC system.

    Foster also became aware of issues at the South Fourth facility, including leaks in the roof, a bird problem, water running against the grade into the building, plaster and bricks falling off the building outside, and respiratory ailments. Foster became aware of issues at the Rochester Road facility, including drainage issues and workplace safety standards.  He became aware of issues at the Concordia Court facility with mold.  Foster states that not only was there mold, the mold was toxic black mold and an industrial hygienist was consulted.  Foster became aware of issues at the

Bloom Building, including mold, respiratory complaints, air quality, and temperature. He became aware of issues at the Harris Building, including air quality, bird problems, particulate matter, and air ducts. Foster became aware of issues at the Industrial Drive facility, including exposed insulation and what he describes as a spider infestation. Additionally, Foster became aware of issues at the Bucari Building, including sewer gas, mold, a collapsed sidewalk, asbestos, exposed electrical wires, leaking water, and safety evacuation concerns.

The only Defendants that Foster spoke to directly about issues in any of the buildings were Bryden and Neposchlan. Foster spoke to those Defendants about the Alzina Building and not other buildings, because they worked in that building and were responsible for issues with that building. Foster ceased to be the health and safety chairperson in 2003 when he was placed on suspension pending judicial verdict. Foster was arrested at his place of work in September of 2003. He was charged with the manufacture and delivery of cannabis for allegedly selling another State employee $100.00 worth of marijuana. Effective October 13, 2003, DHS suspended

Foster pending the judicial verdict in his criminal case. Foster was acquitted of the charges in December of 2005. He was on administrative leave without pay from October 13, 2003 through December 9, 2005.

Following his acquittal, Foster was placed on administrative leave with pay. In July of 2006, following pre-disciplinary procedures, Foster was notified that he would receive a 30-day suspension from DHS for conduct unbecoming a State employee for engaging in a drug transaction. Although Foster acknowledges that he was suspended, he denies that it was for a drug transaction and alleges that Defendants have presented no evidence in support of the assertion that he engaged in a drug transaction.

Foster was scheduled to return from his suspension in August of 2006. When he was scheduled to return from his 30-day suspension, Foster sought a medical leave of absence. The Defendants contend that Foster's medical leave was not immediately granted because he did not submit the proper paperwork. Foster disputes this statement, claiming that the Defendants' assertion is supported only by inadmissible hearsay. Moreover, Foster claims that he submitted all of the necessary paperwork. The Defendants

further allege that Foster was instructed that he needed to call in to work to his supervisor each work day until his leave had been approved. Foster disputes this assertion, claiming that this instruction was never given to him and the Defendants have provided no admissible evidence in support of this statement.

The Defendants allege that a medical leave of absence with DHS cannot start until DHS receives a fully completed CMS-95 form from the employee. Foster states that this is not an accurate statement, though he did provide the document. An employee may call in sick and utilize sick time until a medical leave is approved. The Defendants contend that Plaintiff was discharged from his employment under the affirmative attendance agreement with AFSCME and under the time and attendance policies of DHS. Foster disputes this allegation and contends that Defendants have not presented any documentation to show what the time and attendance policies were. Moreover, they were aware that Foster had been seeking a medical leave of absence.

The Defendants contend that Foster was discharged from his

employment in part for seven consecutive unreported, unauthorized absences from August 18 through August 29, 2006. Moreover, Foster was discharged from his employment in part for eight consecutive unauthorized absences from August 30 through September 12, 2006, while his medical leave had not been approved. Foster disputes these as the reasons for his discharge. He alleges that Defendants were aware he was seeking a medical leave of absence.

The DHS Employee Handbook indicates that any situation that poses a possible threat to any individual's health, safety, and welfare at any work site must be reported to the employee's immediate supervisor as soon as it is discovered. No one ever told Foster that any of the Defendants wanted to see him lose his job or were conspiring against him. Moreover, no one ever told Foster that any action was being taken toward him because of any statements he made about building conditions.

### III. ANALYSIS

A. Summary judgment standard

The entry of summary judgment is appropriate when the pleadings,

depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. The Court construes all facts in the light most favorable to the non-movant, drawing all reasonable inferences in his favor. See Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010).

B. First Amendment retaliation

(1)

A public employee has a right in certain instances to speak as a citizen about matters of public concern. See Garcetti v. Ceballos, 547 U.S. 410, 417 (2010). "The First Amendment, applicable to the states through the Fourteenth Amendment, prohibits a public employer from retaliating

9

against an employee for engaging in protected speech." Milwaukee Deputy Sheriff's Ass'n v. Clarke, 574 F.3d 370, 376 (7th Cir. 2009).  A § 1983 First Amendment retaliation claim involves a three-step analysis: (1) whether the speech was constitutionally protected; (2) whether the protected speech was a but-for cause of the challenged employment action; and (3) whether the employee suffered a deprivation because of the employment action.  See Gross v. Town of Cicero, Ill., 619 F.3d 697, 704 (7th Cir. 2010).

The Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  Garcetti, 547 U.S. at 421.  A determination of an employee's official duties "is a practical exercise that focuses on the duties an employee actually is expected to perform."  Renken v. Gregory, 541 F.3d 769, 773 (7th Cir. 2008) (internal quotations and citation omitted).  Generally, when an individual speaks in his capacity as a union member, the speech does not fall within the purview of Garcetti.  See Nagle v. Village of Calumet Park, 554 F.3d 1106, 1123

(7th Cir. 2009); Fuerst v. Clarke, 454 F.3d 770, 774 (7th Cir. 2006).

In this case, Foster was speaking in his capacity as a union member when he complained about the building conditions in 2002 and 2003. Although the Defendants contend that this case is distinguishable from Nagle and Fuerst because Foster was required by his employment to inform management about health and safety threats that he observed in the workplace, the Court is unable to find that this is a sufficient basis to depart from the general rule. The Court concludes that the speech is not barred by Garcetti.

(2)

The Defendants further assert that even if Foster's claim is not barred by Garcetti, the speech is not entitled to First Amendment protection because it did not involve a matter of public concern under the Connick-Pickering test. To determine whether a statement involves a public concern, courts first look to the "content, form and context" of the statement. See Chaklos v. Stevens, 560 F.3d 705, 712 (7th Cir. 2009) (quoting Connick v. Myers, 461 U.S. 138, 147-48 n.7 (1983)). A court then balances "the

interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Schad v. Jones, 415 F.3d 671, 674 (7th Cir. 2005) (quoting Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)).

The Defendants contend that Foster was not speaking on a matter of public concern. The conditions of the building were observed by Foster during investigations he conducted pursuant to employee complaints. Moreover, Foster has indicated that a casual observer would not necessarily identify these issues as potential threats. The Defendants further assert that Foster was addressing these issues as they pertained to his work area and that of other employees, and not the manner in which DHS–or its buildings--would serve the public. The Defendants contend that Foster has not provided evidence regarding how much time, if any, members of the public would or did spend in any of the buildings that were the subject of his complaints, nor has he provided evidence that members of the public would actually be threatened by any of the conditions. Moreover, Foster has not

presented evidence that members of the general public, other than the building's owners, occupants and union members, were even aware of the conditions that he complained about.

In his response brief, Foster alleges that the health of individuals utilizing public buildings is certainly a matter of public concern. The general public utilized the buildings and thus could have been exposed to unsafe conditions. When the evidence is viewed in a light most favorable to Foster, the Court concludes that there is a genuine issue of material fact as to whether he was speaking on a matter of public concern.

(3)

The Court will now consider whether the protected speech was the but-for cause of the challenged employment action. Plaintiffs bear the burden of demonstrating but-for causation.[2]  See Kodish v. Oakbrook Terrace Fire Protection Dist., 604 F.3d 490, 501 (7th Cir. 2010).

---

[2]The parties' briefs suggest that Plaintiff need only establish that the protected speech was a "substantial" or "motivating" factor in the alleged retaliatory action. However, the Seventh Circuit has recently held that "but-for" causation is required in First Amendment retaliation claims. See Fairley v. Andrews, 578 F.3d 518, 525-26 (7th Cir. 2009) (citing Gross v. FBL Financial Services, Inc., __ U.S. __, 129 S. Ct. 2343, 2351 (2009)).

13

The speech at issue occurred from 2002 until mid-2003. Foster would investigate complaints from state employees about building conditions and health and safety issues and then notify management and maintenance.

Foster's complaint alleges three separate instances of retaliation: (1) being placed on administrative leave for nearly six months after he was acquitted; (2) thereafter being suspended for 30 days in July 2006 for allegedly selling drugs to a co-worker; and (3) being terminated.

Regarding the first instance of alleged retaliation, Foster was placed on leave for conduct unbecoming a state employee. Foster contends that Defendants have advanced no argument as to why it was that Foster was put on administrative leave for six months following his acquittal. The Defendants assert that this action was taken so that DHS could contemplate discipline. This appears to be a reasonable explanation. Given the differences in the respective burdens of proof, an acquittal of criminal charges does not necessarily mean that an employee did not engage in "conduct unbecoming." It is unremarkable that an employer might want to conduct its own investigation. More significantly, however, Foster points

to no evidence that suggests a connection between his protected speech more than two years earlier and the decision to place him on administrative leave.

Foster was also suspended for 30 days for allegedly engaging in a drug transaction. Foster denies that he was involved in a drug transaction and contends that Defendants have presented no evidence to support any type of a suggestion that he engaged in a drug transaction of any kind. However, Defendant Henderson testified in his deposition that a confidential source identified Foster as someone who was willing to sell marijuana. Therefore, although Foster was acquitted of the criminal charge, there appears to be at least some evidence that he had previously engaged in a drug transaction. Even if there is no such evidence, however, Foster has pointed to nothing which suggests a connection between his protected activity which ended in September of 2003 or earlier and the 30-day suspension in July of 2006.

The final alleged example of illegal retaliation is Foster's 2006 termination. The Defendants claim that Foster's employment was

terminated because he incurred a number of unauthorized absences in August and September of 2006. Although he was cleared to return to work following his 30-day suspension, Foster sought a medical leave of absence. The Defendants contend that Foster was not immediately granted medical leave because he did not submit the proper paperwork. Moreover, they contend that although Foster was instructed to call in to work to his supervisor each work day until his leave was approved, Foster failed to do this. Foster contends that he did submit the necessary paperwork. Foster further asserts he was never instructed that he was required to call in to his supervisor each day until his leave was approved.

The Court concludes that the disputes over whether Foster submitted the proper documentation and whether he was required to call in until his leave was approved do not involve any material facts. In order to survive summary judgment, Foster must show that there is a factual question regarding whether he would have been terminated but for his protected activity. The disputes over whether his leave was approved miss the point. Foster contends that there is a factual question because of the lack of

evidence supporting the Defendants' argument over these issues. Significantly, however, Foster has presented no evidence–other than his own speculation–that most of the Defendants were even aware that he reported environmental hazards and/or problems in state office buildings nearly three years before he was terminated. Accordingly, Foster cannot show that his protected activity was a but-for cause of his termination.

IV. CONCLUSION

Although the Court finds that Plaintiff's speech is not barred by Garcetti and does touch on a matter of public concern, the Court concludes that Plaintiff has not met his burden with respect to whether the speech caused the challenged employment actions. Accordingly, the Defendants are entitled to summary judgment.

Ergo, the Defendants' motion for summary judgment [d/e 20] is ALLOWED.

The Clerk will enter judgment in favor of the Defendants and against the Plaintiff.

This case is closed.

ENTER: January 27, 2011

   FOR THE COURT:

                                      s/Richard Mills
                                      United States District Judge